FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2014 SEP 11  PM 3: 58

WILLIAM W. BLEVINS
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BILL OF INFORMATION FOR CONSPIRACY
TO COMMIT HONEST SERVICES MAIL FRAUD



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 14-199 |
| v. | * | SECTION: SECT. C MAG. 2 |
| PATRICIA TATE | * | VIOLATION: 18 USC § 371 |

\*   \*   \*

The United States Attorney charges that:

### COUNT 1

**A.   AT ALL TIMES MATERIAL HEREIN:**

1.  The Louisiana Department of Insurance had the power and authority to issue and revoke bail producer licenses that permitted qualified individuals to function as bail bondsmen within the State of Louisiana.

2.  Louisiana state law prohibited any person from soliciting, negotiating, or effecting bail bond contracts without a valid bail producer license.

3.  At no time relevant to this Bill of Information was Bail Bondsman A licensed by the Louisiana Department of Insurance.

4.  From in and around 1993 through in and around August 15, 2014, the defendant, **PATRICIA TATE**, was an employee and deputy clerk of the Clerk of Orleans Parish Criminal

___ Fee_____
___ Process____
_X_ Dktd_____
___ CtRmDep___
___ Doc. No.___

District Court's Office ("Clerk's Office"), assigned to the division of the Clerk's Office known as the Magistrate Clerk's Office.

5. **TATE**'s primary responsibilities as a deputy clerk were to prepare records for the Magistrate Section of Criminal District Court relating to pre-indictment appearance dockets, which included initial appearances and preliminary examinations on state law arrests, and to type court subpoenas and answer the office telephone.

6. At all times relevant to this Bill of Information, **TATE** was aware that Bail Bondsman A was not a licensed bail bondsman, and that Bail Bondsman A was soliciting, negotiating, and effecting bail bond contracts without a valid bail producer license, from Bail Bondsman A's bail bond business located at 538 S. Broad Street in New Orleans.

7. All commercial bail bonds for Criminal District Court were processed through the Magistrate Clerk's Office. At the request of a bail bondsman, a deputy clerk in the Magistrate Clerk's Office designated as a bond clerk would prepare a typed bail bond form stating the defendant's name, the criminal charge, the bail amount for the charge, and the name of the insurance company underwriting the commercial bail bond. The bondsman was then required to present to a bond clerk an executed power of attorney from the insurance underwriter, authorizing the bondsman to sign the bail bond as attorney-in-fact for the insurance company. The bondsman was then required to sign the bail bond document in the presence of a bond clerk as the attorney-in-fact for the insurance company. A bond clerk was required to personally witness and attest that the signature of the bondsman was in fact signed by the named bondsman and in the presence of the bond clerk. These requirements were designed to prevent fraud by ensuring that only authorized and licensed individuals were acting as bondsmen in accordance with the laws of the State of Louisiana, and that only authentic signatures, actually

made by the individuals they purported to represent, were affixed to the official bond documents. The bondsman was then responsible for transmitting a copy of the executed power of attorney to the insurance underwriter.

8. Bail Bondsman A solicited, negotiated, and effected numerous commercial bail bonds prepared by the Clerk's Office and thereafter deposited, or caused to be deposited, carbon copies of all executed powers of attorney to be delivered to an insurance company agent by FedEx or another commercial interstate carrier.

9. After a commercial bail bond underwriter became a surety for a criminal defendant, notice of the defendant's next court date would be sent from the Clerk's Office to the defendant and the underwriter's agent via U.S. mail or personal delivery. Notice of any bond forfeiture judgment would also be sent to the underwriter by a deputy clerk via U.S. mail.

10. Deputy clerks had official-use access to computerized criminal justice records pertaining to criminal defendants, including records of arrest status, prior criminal history, and outstanding warrants. This information was valuable to commercial bail bondsmen who were seeking to post bail bonds for inmates and to address bond forfeitures.

## B. THE CONSPIRACY

1. From a time in or around 2007 through in and around March 2010, in the Eastern District of Louisiana and elsewhere, the defendant, **PATRICIA TATE**, along with Bail Bondsman A and others known and unknown to the United States Attorney, did knowingly and willfully conspire, confederate, and agree with each other and with other persons known and unknown to the United States Attorney, to:

    a. use commercial interstate carriers and the United States Postal Service in furtherance of a scheme and artifice to defraud and to obtain money and property and to deprive the Citizens of Orleans Parish, Louisiana, of their right to

the honest services of the defendant, **PATRICIA TATE**, in violation of Title 18, United States Code, Sections 1341 and 1346.

C. **OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY**

On or about the dates below, in furtherance of the conspiracy and to effect the unlawful objects thereof, the defendant, **PATRICIA TATE**, along with Bail Bondsman A and others known and unknown to the United States Attorney, committed and caused to be committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

1. In or about October 2009, the defendant, **PATRICIA TATE**, in association with others known and unknown to the United States Attorney, accepted cash from Bail Bondsman A at Bail Bondsman A's office located at 538 S. Broad Street, New Orleans, in exchange for her willing and knowing ignorance and violation of her official duties as a deputy clerk of the Magistrate Clerk's Office.

2. In or about October 2009, the defendant, **PATRICIA TATE**, accessed criminal justice records through an official computer terminal within the Magistrate Clerk's Office to run lists of names of criminal defendants and obtain arrest statuses, criminal histories, and warrant information for Bail Bondsman A.

3. In or about October 2009, the defendant, **PATRICIA TATE**, delivered bail bonds that had been typed and signed by a bond clerk without having been signed by a bondsman to Bail Bondsman A in Bail Bondsman A's office located at 538 S. Broad Street, New Orleans.

4. In or about October 2009, the defendant, **PATRICIA TATE**, called up a court record from a docket clerk assigned to a court section in Criminal District Court at the request of Bail Bondsman A.

5. In or about October 2009, the defendant, **PATRICIA TATE**, delivered copies of court documents to Bail Bondsman A in Bail Bondsman A's office at 538 S. Broad Street, New Orleans, without charging the fees assessed by the Clerk's Office for such copies.

6. In or about October 2009, Bail Bondsman A deposited, or caused to be deposited, a carbon copy of an executed power of attorney to be delivered to an agent of Insurance Company A by FedEx, a commercial interstate carrier.

All in violation of Title 18, United States Code, Section 371.

                            KENNETH ALLEN POLITE, JR.
                            UNITED STATES ATTORNEY

                            */s/ Michael B. Redmann*
                            MICHAEL B. REDMANN
                            Special Assistant United States Attorney
                            Louisiana Bar Roll No. 31929

New Orleans, Louisiana
September 11, 2014

No. _____

# United States District Court
## FOR THE
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

vs.

PATRICIA TATE

BILL OF INFORMATION
FOR CONSPIRACY TO COMMIT
HONEST SERVICES MAIL FRAUD

Violation(s): 18 U.S.C. § 371

Filed _____, 20 14

_____, Clerk.

By _____, Deputy

_____
MICHAEL B. REDMANN
Special Assistant United States Attorney